1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  1:14-cr-00236-DAD-BAM

12              Plaintiff-Respondent,

13        v.                                ORDER DENYING DEFENDANT-
                                            PETITIONER'S MOTION TO VACATE, SET
14   ANTHONY LESTER,                        ASIDE, OR CORRECT SENTENCE UNDER
                                            28 U.S.C. § 2255
15              Defendant-Petitioner.
                                            (Doc. No. 129)
16

17         Defendant-petitioner Anthony Lester ("petitioner") is a former federal prisoner currently

18   out of custody and serving his term of supervised release, and proceeding *pro se* with a motion to

19   vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  (Doc. No. 129.)  On

20   August 19, 2016, a jury returned a verdict finding petitioner guilty on two counts of mail fraud in

21   violation of 18 U.S.C. § 1341 and five counts of money laundering in violation of 18 U.S.C.

---

[1]  The undersigned apologizes for the delay in the issuance of this order.  This court's
overwhelming caseload has been well publicized and the long-standing lack of adequate judicial
resources in this district long-ago reached crisis proportion.  While that situation was partially
addressed by the U.S. Senate's confirmation of district judges for two of this court's vacancies on
December 17, 2021 and June 21, 2022, another vacancy on this court with only six authorized
district judge positions was created on April 17, 2022.  For over twenty-two months the
undersigned was left presiding over approximately 1,300 civil cases and criminal matters
involving 735 defendants.  That situation resulted in the court not being able to issue orders in
submitted matters within an acceptable period of time and continues even now as the undersigned
works through the predictable backlog.  This has been frustrating to the court, which fully realizes
how incredibly frustrating it is to the parties.

1

1   § 1956(a)(1)(B)(i), as charged in the indictment.  (Doc. Nos. 1, 67.)  On November 14, 2016,

2   petitioner was sentenced by the undersigned to the custody of the U.S. Bureau of Prisons ("BOP")

3   for a 64-month term of imprisonment, to be followed by a 36-month term of supervised release.

4   (Doc. No. 103.)  The BOP Inmate Locator indicates that petitioner was released from custody on

5   September 29, 2021.[2]

6           On August 12, 2019, petitioner filed the pending petition seeking post-conviction relief

7   pursuant to 28 U.S.C. § 2255 based on the alleged ineffective assistance of his trial counsel.

8   (Doc. No. 129 at 13–71.)[3]  Petitioner asserts sixteen instances of ineffective assistance he

9   received from his trial counsel in connection with all stages of the proceeding in the trial court

10  from plea negotiations through the trial of the case and at his sentencing.  (*Id.*)  The majority of

11  these ineffective assistance of counsel claims are closely related to petitioner's arguments

12  involving physical count adjustment report evidence—arguments that both this court and the

13  Ninth Circuit have previously found to be unpersuasive.[4]  The government contends that the

14  pending § 2255 motion should be denied because petitioner has failed to establish that his trial

15  counsel's performance was unreasonable in any way or that the alleged deficiencies in his trial

16  counsel's performance prejudiced petitioner.  (Doc. No. 140 at 13.)

17  _____

18  [2]  U.S. Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Sept. 7,
    2022).  On August 2, 2021, defendant-petitioner Lester filed a notice of change of address with
19  the court.  (Doc. No. 149.)

20  [3]  In total, the filing was 74 pages in length.

21  [4]  Although petitioner has served the prison sentence imposed for his convictions in this case, it
    does not necessarily follow that this motion has been rendered moot.  In addition to being
22  sentenced to a 64-month term of imprisonment, petitioner's sentence included a 36-month term of
    supervised release to follow.  (Doc. No. 103 at 3–4.)  Accordingly, defendant is on supervised
23  release until on or about September 21, 2024, according to the terms of the judgment entered
    against him in this case.  In the motion pending before the court, defendant seeks to vacate his
24  sentence in its entirety.  (See Doc. No. 129 at 12.)  Therefore, arguably, although he has "been
    released from incarceration, his petition is not now moot because he is currently on supervised
25  release, which could be reduced or eliminated by grant of the Writ."  *United States v. Johnson*, 23
    Fed. App'x 832, 833 (9th Cir. 2001) (citing *Fraley v. United States Bureau of Prisons*, 1 F.3d
26  924, 925 (9th Cir.1993)).  Because defendant-petitioner Lester remains on supervised release
    pursuant to the judgment entered against him in this case, the court will address his motion on the
27  merits.

28

1    For the reasons discussed below, the court will deny petitioner's § 2255 motion.

2                              **FACTUAL BACKGROUND**

3    The following factual background consists of excerpts from the statement of facts

4    provided in petitioner's own opening brief on appeal filed on his behalf his appointed appellate

5    counsel.  *See* Appellant's Opening Brief, *United States v. Lester*, No. 16-10506, 2018 WL

6    1831276 (9th Cir. Apr. 9, 2018).

7            The first two counts charged Mr. Lester with embezzling funds from
             his former employer through a scheme to defraud that was furthered
8            by mailings with a common carrier, UPS.  The other five counts
             charged Mr. Lester with attempting to conceal the proceeds of that
9            alleged scheme.

10                                    . . .

11           Mr. Lester was charged with stealing from his employer.  Mr. Lester
             was employed by Highlands Diversified, Inc., doing business as
12           Highlands Energy Services ("Highlands"), from approximately
             August 2010 to October 2011 as the CFO.  He reported directly to
13           Highlands owner Leonel Alvarado regarding financial matters.
             Highland Energy Services is a weatherization company.  It provides
14           and installs energy-saving products in existing buildings, retrofitting
             them to be more energy efficient.  Highlands would buy energy
15           saving devices from vendors for delivery to its warehouses, transport
             the materials out to the job sites, and finally install it in buildings.
16
             The government alleged that Mr. Lester diverted Highland funds
17           intended for purchasing inventory and, rather than purchasing
             inventory, Mr. Lester allegedly pocketed the money (using a Rube
18           Goldberg-styled system via PayPal, corporate credit cards and bank
             accounts).
19
             On November 6, 2014, Mr. Lester was indicted for mail fraud and
20           money laundering.  The indictment alleges that between November
             2010 and December 2011, Mr. Lester "transferred approximately
21           $277,000 from the Highlands' bank account to Highlands' Pay Pall
             account.  These transfers were not for legitimate business purposes
22           or the purchase of legitimate business supplies." [3ER 968-977]

23           Each of the two mail fraud counts concerns a separate package of
             inventory purchased by Mr. Lester from a supplier and received by
24           Highlands on October 24th and 27th of 2011.   Each of the five
             money laundering counts concerns a single monetary transfer
25           occurring between January 14, 2011, and September 30, 2011.

26                                    . . .

27           As to all counts, Mr. Lester's only defense was that the $277,000 was
             actually used to purchase inventory.  When inventory was purchased
28           without a purchase order, it was physically counted on receipt,

                                        3

1

2

3

4

5

6

> generating a physical count adjustment report.  The government produced at least one such report in discovery and it was introduced at trial as Defense Exhibit B.  [2ER 429]  Two more (monthly versions) of the physical count adjustment reports were located after trial and attached to Mr. Lester's motion for a new trial.  [3ER 708-724]  The monthly physical count adjustment reports recorded inventory received outside the normal work order process and the cost of each inventory item.  Mr. Lester's defense was that he had purchased inventory via Highland's PayPal account and that correct inventory reconciliation would prove this.

7

Appellant's Opening Brief, *Lester*, 2018 WL 1831276 at \*3–6.

8

**PROCEDURAL BACKGROUND**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

On November 6, 2014, the federal grand jury for this district returned an indictment charging petitioner with two counts of mail fraud in violation of 18 U.S.C. § 1341 and five counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  (Doc. No. 1.)  The jury trial in this action commenced on August 16, 2016, and the jury returned its guilty verdicts on all counts on August 19, 2016.  (Doc. No. 67.)  Post-conviction, petitioner resubmitted a previously-denied without prejudice application for a Rule 17(c)(3) subpoena for all "physical count adjustment reports" from Highlands, which the court granted.  (Doc. No. 72.)  Petitioner subsequently filed a motion for new trial (Doc. No. 89) and a motion for post-trial discovery and *Brady* material (Doc. No. 91), both of which the court denied on November 14, 2016, after hearing oral argument. (Doc. No. 96.)  Petitioner also filed objections to the forfeiture amount sought by the government. (Doc. No. 90 at 11–12.)  In response to that objection, the court held a forfeiture hearing on November 21, 2016, at which time petitioner's forfeiture related objections were overruled. (Doc. No. 99.)  Petitioner was subsequently sentenced to a 64-month term of imprisonment with a 36-month term of supervised release to follow, ordered to pay $306,319.88 in restitution to the victim of his offense and the mandatory $700 special assessment was imposed as to the seven counts of conviction.  (Doc. No. 103.)

25

26

27

28

Petitioner appealed from his judgment of conviction and sentence to the Ninth Circuit, which affirmed his conviction and sentence on May 6, 2019.  (Doc. No. 125.)  Petitioner presented the following arguments on appeal: (1) the denial of his pre-trial request for the issuance of a Rule 17(c) subpoena violated his "Fifth and Sixth Amendment right to present a

4

defense;" (2) his motion for a new trial should have been granted because the government violated its obligation under *Brady* to produce physical count adjustment reports and "untruthfully argued to the jury that the reports never existed; and (3) the court erred in calculating petitioner's sentencing guideline range without considering physical count adjustment reports that were not produced by the government.  Appellant's Opening Brief, *Lester*, 2018 WL 1831276 at *19, 32, 45.  In affirming petitioner's conviction and sentence, the Ninth Circuit stated:

> Lester's strategic decision to withhold documents, resulting in a denial of his pre-trial Rule 17(c) subpoena, does not render the district court's decision clearly arbitrary or without support in the record.  The district court did not abuse its discretion by finding Lester failed to provide evidence that the documents he sought in his pre-trial Rule 17(c) subpoena existed.
>
> . . .
>
> **Not only did the government present copious amounts of evidence that Lester engaged in theft, including testimony by an experienced financial analyst and bank records clearly establishing the flow of money out of the victim's account and into Lester's account, Lester severely exaggerates the probative value of a physical count adjustment report.**
>
> After his trial, Lester disclosed multiple physical count adjustment reports that had not been previously disclosed and attempted to move for a new trial based on those "newly discovered" documents.  Those documents list item numbers and amounts, but there is no indication that the reports reflect inventory purchased by Lester.  Nor has Lester made such a showing, as those "newly discovered" documents were never authenticated, introduced at trial, or presented to witnesses.
>
> The district court did not clearly err by relying upon the abundant evidence presented at trial indicating Lester's theft and, moreover, "[t]he court need not make its loss calculation with absolute precision; rather, it need only make a reasonable estimate of the loss based on the available information."  *United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007).
>
> The district court did not err when it denied Lester's motion for a new trial. . . . Lester provided no evidence, pre-trial, that physical count adjustment reports existed or that the government was aware of the existence of such documents.  **More importantly, the physical count adjustment reports Lester introduced post-trial were neither exculpatory nor impeaching, and Lester therefore failed to establish a *Brady* violation.**  The district court did not abuse its discretion in denying Lester's motion for an evidentiary hearing.

5

1
2

> Additionally, the government's statement in rebuttal closing that no
> other physical count adjustment reports existed, to which Lester did
> not object contemporaneously, was not plain error.

3   (Doc. No. 125 at 2–5) (emphasis added).  On July 30, 2019, the Ninth Circuit denied the petition

4   for rehearing and rehearing *en banc* filed on behalf of petitioner.  (Doc. No. 127.)

5        Proceeding *pro se*, petitioner timely filed the pending § 2255 motion (Doc. No. 129) on

6   August 12, 2019, within one year of his conviction becoming final, as required by 28 U.S.C. §

7   2255(f).  *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court

8   affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or

9   when the time for filing a certiorari petition expires.").  The government does not dispute that the

10  pending motion was timely filed (Doc. No. 168 at 3) and it responded to the motion on December

11  3, 2019.  (Doc. No. 140.)  That opposition included a 35-page declaration from petitioner's trial

12  counsel refuting petitioner's allegations that he had received ineffective assistance of counsel at

13  trial.  (Doc. No. 140-2.)  Trial counsel's declaration was supported by 126 pages of exhibits

14  including emails from defendant-petitioner to his trial counsel which are in several respects

15  inconsistent with the assertions he now makes in his pending motion. (*See* Doc. No. 140-3 at 78)

16  (defendant-petitioner writing on September 8, 2016 to his trial counsel: "Also, for the record, I

17  stand behind all of the decisions you made in preparation for and during my trial.  Keep doing

18  what you need to do.")   After receiving several extensions of time to do so, petitioner filed his

19  139-page reply to the government's opposition on March 17, 2020.  (Doc. No. 148.)[5]  As noted

20  /////

---

21  [5]  Petitioner's filings provide a lengthy narrative (in often repetitive detail) of both his theory of
22  the defense case (at least the post-trial version of that theory) and the many alleged failings of his
   trial counsel.  Of course, it is not unusual for defendants who have gone to trial and been
23  convicted by a jury that heard the actual evidence to be unhappy with both the result and with
   their trial counsel.  Here, in his reply brief, petitioner repeatedly accuses his trial counsel of
24  fabrications in counsel's declaration presented by the prosecution in opposition to the pending
   motion.  Nonetheless, what petitioner Lester's filings fail to establish is any specific instance in
25  which he received ineffective assistance of counsel in violation of his constitutional rights or any
   basis to conclude that petitioner suffered any prejudice as a result of the actions of his trial
26  counsel which he now challenges.  This is particularly true in light of the overwhelming evidence
   of petitioner's guilt that included evidence both tracing the stolen funds into his own bank
27  account and his creative, but ultimately unsuccessful, attempts to send useless product shipments
   from a fictitious vendor to his employer so as to support his theory of the defense.
28

6

above, petitioner was thereafter released from custody following the service of his prison term and is now serving his term of supervised release.

## LEGAL STANDARD

### A.      28 U.S.C. § 2255 Motions

A federal prisoner collaterally attacking the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed the sentence.  *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002).  Section 2255 provides four grounds upon which a sentencing court may grant relief to a federal prisoner:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255(a); *see also Davis v. United States*, 417 U.S. 333, 344–45 (1974); *Monreal*, 301 F.3d at 1130; *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).

To warrant the granting of relief on a § 2255 motion, the petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").  Such relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice."  *Davis*, 417 U.S. at 346; *see also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

"[A] district court must grant a hearing to determine the validity of a petition brought under [§ 2255], '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal."  *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted); *see also United States v. Withers*, 638 F.3d 1055,

1062–63 (9th Cir. 2011); *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003).  To

warrant a hearing, therefore, the petitioner must make specific factual allegations which, if

established to be true, would entitle him to relief.  *Withers*, 638 F.3d at 1062; *McMullen*, 98 F.3d

at 1159.  Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require

the court to hold a hearing.  *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

Finally, the Ninth Circuit has recognized in the § 2255 motion context that "where the issue of

credibility can be 'conclusively decided on the basis of documentary testimony and evidence in

the record,' no evidentiary hearing is required."  *Shah v. United States*, 878 F.2d 1156, 1159 (9th

Cir.  1989) (quoting *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir.1989)); *see also*

*Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) (noting that "the judge's recollection of the

events at issue may enable him summarily to dismiss a § 2255 motion"); *United States v. Tillman*,

No. 19-16419, 2021 WL 3739175, at *3 (9th Cir. 2021).[6]

**B.      Ineffective Assistance of Counsel Claims**

         The clearly established federal law governing ineffective assistance of counsel claims

such as those presented in the pending motion is that set forth in *Strickland v. Washington*, 466

U.S. 668 (1984).  To succeed on such a claim, a defendant must show that:  (1) his counsel's

performance was deficient; and (2) the "deficient performance prejudiced the defense."  *Id*. at

687; *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (noting that the two-part *Strickland* test

"applies to challenges to guilty pleas based on ineffective assistance of counsel").  "[T]here is a

'strong presumption' that counsel's representation was within the 'wide range' of reasonable

professional assistance."  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466

U.S. at 689.)  A petitioner must rebut this presumption by demonstrating that his counsel's

performance was unreasonable under prevailing professional norms and was not the product of

sound trial strategy.  *Strickland*, 466 U.S. at 688–89.  Thus, "strategic choices made after

thorough investigation of [the relevant] law and facts relevant to plausible options are virtually

unchallengeable."  *Id.* at 690.  In short, judicial scrutiny of counsel's performance is highly

---

[6]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
36–3(b).

1   deferential, and thus the court must evaluate counsel's conduct from his perspective at the time it

2   occurred, without the benefit of hindsight.  *Id.* at 689; *see also Richter*, 562 U.S. at 104

3   ("Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose

4   result is reliable.'") (quoting *Strickland*, 466 U.S. at 687).

5        The Sixth Amendment right to counsel "extends to the plea-bargaining process."  *Lafler v.*

6   *Cooper*, 566 U.S. 156, 162 (2012).  To prevail on a claim of ineffective assistance of counsel in

7   connection with that stage of a criminal proceeding, a petitioner must demonstrate "'gross error

8   on the part of counsel,'" *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *McMann*

9   *v. Richardson*, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was

10  "so incorrect and so insufficient that it undermined his ability to make an intelligent decision

11  about whether to accept the [plea] offer."  *Id.* (quoting *United States v. Day*, 969 F.2d 39, 43 (3rd

12  Cir. 1992)).  In addition, the Ninth Circuit has stated:  "If it is ineffective assistance to fail to

13  inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea

14  bargain when it is clearly in the client's best interest."  *Leonti*, 326 F.3d at 1117.

15       However, defense counsel is not "required to accurately predict what the jury or court

16  might find."  *Turner*, 281 F.3d at 881; *see also McMann*, 397 U.S. at 771 ("[U]ncertainty is

17  inherent in predicting court decisions.").  Nor is counsel required to "discuss in detail the

18  significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or

19  "strongly recommend" the acceptance or rejection of a plea offer.  *Turner*, 281 F.3d at 881.  As

20  the Ninth Circuit has observed, while counsel must fully advise the defendant of his options, he is

21  not "constitutionally defective because he lacked a crystal ball."  *Id.*  The relevant question is not

22  whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range

23  of competence demanded of attorneys in criminal cases."  *McMann*, 397 U.S. at 771.

24       Finally, even where counsel's performance is found to be deficient, in order to prevail on

25  such a claim a petitioner is required to show that his counsel's conduct prejudiced him.

26  *Strickland*, 466 U.S. at 691–92.  To establish prejudice, a petitioner must demonstrate that there is

27  "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

28  would have been different."  *Id.* at 694.  A reasonable probability is one "'sufficient to undermine

9

confidence in the outcome'" but is "less than the preponderance more-likely-than-not standard." *Summerlin v. Schriro*, 427 F.3d 623, 640, 643 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693-94).  Nonetheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

## ANALYSIS

In his pending § 2255 motion petitioner asserts that he is entitled to post-conviction relief on sixteen claimed instances of ineffective assistance provided by his trial counsel, many of which are based on petitioner's continuing disagreement with his counsel's strategic decisions regarding the physical count adjustment report evidence and the defense Rule 17(c)(3) subpoena requests.  (Doc. No. 129.)[7]  The government contends that petitioner's allegations do not support a claim for relief, are not credible, or are so conclusory that the pending motion should be denied without further hearing.  (Doc. No. 140 at 28.)  The court will address each of petitioner's ineffective assistance claims in turn.  As explained below, the court concludes that it is plain on the face of pending motion that petitioner is not entitled to § 2255 relief with respect to any of his claims.

/////

---

[7]  To the extent these claims are merely a re-presentation of claims and substantive arguments rejected by the Ninth Circuit on appeal now couched as ineffective assistance of counsel claims, they would also be barred from reconsideration by way of a §2255 motion such as this one.  *See Davis v. United States*, 417 U.S. 333, 342 (1974) (issues determined in a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law); *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (claims previously raised on appeal "cannot be the basis of a § 2255 motion"); *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) ("Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding."); *Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975) ("Issues raised at trial and considered on direct appeal are not subject to collateral attack under 28 U.S.C. § 2255.")  This bar against relitigating issues in a § 2255 proceeding is an application of the law of the case doctrine.  *See United States v. Jingles*, 702 F.3d 494, 498 (9th Cir. 2012) ("A collateral attack is the 'same case' as the direct appeal proceedings for purposes of the law of the case doctrine.").  "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988).  "When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000.  Nonetheless, the court will address defendant-petitioner Lester's claims on their merits.

1    **A.      Claims One and Two**

2           In his Claims One and Two petitioner asserts that his trial counsel was ineffective in

3    failing to obtain a Rule 17(c)(3) subpoena directed at, and to ultimately collect, physical count

4    adjustment reports that petitioner continues to claim both existed and would have shown that

5    actual inventory was purchased "outside the normal ordering process" or "off record" for his

6    employer with the funds he was convicted of stealing.  (Doc. No. 129 at 13–25.)  Petitioner

7    contends that his trial counsel was ineffective by failing to:  (1) obtain the physical count

8    adjustment reports; (2) obtain a pretrial Rule 17(c)(3) subpoena for such reports; (3) contest false

9    trial testimony by Patricia Rodarte, the Highlands employee in charge of purchasing; and (4) take

10   depositions of certain witnesses, produce inventory reports at trial, and call certain witnesses at

11   trial.  (*Id.* at 18–25.)

12          In opposition, the government continues to question whether the physical count

13   adjustment reports that petitioner remains fixated on ever existed and notes that the allegedly

14   exculpatory nature of such reports (if they exist) has never been established by petitioner.  (Doc.

15   No. 140 at 13–16) (citing Doc. No. 140-2 at ¶¶ 89–95, 110, 114, 131, 134, 140, 147).  In support,

16   the government points to the declaration of petitioner's trial counsel.  (*Id.*)  The government also

17   argues that trial counsel's strategic decisions in defending petitioner were reasonable based on the

18   dubious veracity of the purported exculpatory evidence petitioner produced to his counsel in the

19   form of phony invoices, inventory reports, and the illegitimate American Products vendor.  (*Id.*)

20   The government points out that petitioner appeared to have agreed at the time with his counsel's

21   decision not to refile an application for a Rule 17(c) subpoena and to not call as witnesses other

22   Highlands warehouse managers, because investigation into the alleged physical evidence and

23   interviews with those warehouse managers undermined several factual claims petitioner advanced

24   in his defense.  (*Id.*)  The government's arguments in this regard are clearly persuasive.

25          Petitioner has demonstrated neither ineffective assistance by his trial counsel, nor

26   prejudice.  Therefore, the § 2255 motion fails to satisfy the two-pronged ineffective assistance of

27   counsel test set out in *Strickland*.  *See Mitchell v. United States*, 790 F.3d 881, 885 (9th Cir. 2015)

28   /////

1   ("[The] defense team . . .  facing unenviable choices, made a reasonable strategic decision . . . .

2   Strategic decisions such as this do not support a claim of ineffective assistance of counsel").

3   **B.      Claims Three and Five**

4              In Claim Three, petitioner contends that at post-trial motions hearings his trial counsel

5   withheld evidence in the form of Highlands inventory purchase invoices and inventory reports,

6   resulting in his motion for a new trial being denied.  (Doc. No. 129 at 27–30.)  In his Claim Five,

7   he argues that his counsel failed to locate and disclose invoices and receipts, which petitioner

8   alleges would have matched the supposed exculpatory monthly physical count adjustment reports

9   and would have shown that his employer, Highlands, actually received materials that petitioner

10  purchased with company funds.  (*Id.* at 40.)

11             In response, the government contends that petitioner's attorney did include inventory

12  reports in his post-trial filings.  (Doc. No. 140 at 19) (citing Doc. No. 140-2 at ¶¶ 159, 163, 165,

13  167, 170).  The government also argues that counsel's omission of the invoices and receipts that

14  petitioner claims would have been exculpatory was a reasonable strategic decision made by

15  counsel after his investigation led him to conclude that the invoices and receipts petitioner had

16  provided to his counsel appeared to be fabricated.  (Doc. No. 140 at 19–20) (citing Doc. Nos.

17  140-2 at ¶¶ 20, 40, 68–69, 88–90, 171; 140-3 at Exh. C-2, D).

18             In reply, petitioner merely protests the conclusion reached by his trial counsel and the

19  government.  But merely stating that something exists or has been proven, obviously does not

20  make it so.  Petitioner presents no actual evidence even vaguely suggesting that his trial counsel's

21  conclusions in this regard were erroneous or that his strategic decisions based thereon fell outside

22  "the 'wide range' of reasonable professional assistance."  *Richter*, 562 U.S. at 104 (quoting

23  *Strickland*, 466 U.S. at 689.)

24             Accordingly, petitioner has demonstrated neither ineffective assistance by his trial

25  counsel, nor prejudice as to these claims and has failed to satisfy the two-pronged ineffective

26  assistance of counsel test set out in *Strickland*.  *See Mitchell*, 790 F.3d at 885.

27  /////

28  /////

**C.      Claims Four, Six, and Eight**

In his Claim Four, petitioner contends that his trial attorney failed to adequately investigate petitioner's use of the company's Paypal account, which petitioner alleges was authorized by the owners of Highlands as a strategy to shield cash transactions "which might have raised suspicions during an audit or at tax time" and to skirt around contract requirements.  (Doc. No. 129 at 33.)  Petitioner also argues that his attorney should have deposed the owners or called them as witnesses at trial to probe this area of inquiry.  (*Id.* at 32–38.)  In his Claim Six, petitioner argues that his attorney failed to explore the motives of Highlands' owners, alleging that he was fired for discovering illegal corporate payments and that exposing this at trial would have called the credibility of the owners into question.  (*Id.* at 42–45.)  In his Claim Eight, petitioner contends that his attorney's decision not to offer a defense against the two mail fraud counts was unreasonable.  (*Id.* at 49–50.)  Petitioner incredibly argues that he did in fact send materials to Highlands from what was a real vendor but did so using a false label from American Products only in order to account for a 2011 American Products purchase that he could not reconcile.  (*Id.* at 49.)  Petitioner continues to contend in conclusory and unsupported fashion that the materials were used by Highlands in weatherization jobs, and that his attorney should have been able to defend against the mail fraud charges by proving that the materials were not in fact returned.  (*Id.* at 49–50.)

In opposition, the government describes these claims as "almost entirely new, fantastic narratives regarding how the owner of the company told him to set up the buying of inventory using Paypal, how Lester was really fired for being a whistleblower, and how Lester faked the American Products shipment to correct an earlier real American Products shipment that somehow could not get reconciled."  (Doc. No. 140 at 17.)  The government notes that petitioner did not discuss with his trial attorney or include in any of his summaries in preparation for trial any of these allegations that are now advanced in support of his § 2255 claims.  (*Id.* at 17–18.)  The government contends that none of these allegations are supported by fact or negates "evidence of [petitioner's] theft by electronic financial transactions," or explains how the presenting of this information could have changed the verdict returned against him.  (*Id.* at 18.)

1    Again, the court finds the government's arguments to be clearly persuasive.[8]  Petitioner

2    has demonstrated neither ineffective assistance by his trial counsel, nor prejudice as to these

3    claims and thus has failed to satisfy the two-pronged ineffective assistance of counsel test set out

4    in *Strickland*.  *See Mitchell*, 790 F.3d at 885.

5    **D.    Claim Seven**

6        In his seventh claim, petitioner argues that his trial counsel failed to adequately review

7    with him the discovery documents produced by the government.  (Doc. No. 129 at 47.)  However,

8    petitioner concedes that he is actually unaware of whether his attorney himself reviewed all of the

9    discovery documents.  (*Id.*)  In opposition, the government argues that attorney Days adequately

10   reviewed the discovery documents with petitioner.  (Doc. No. 140 at 20) (citing ¶¶ 51, 54, 65, 69,

11   85, 100, 108–09, 111–14, 133, 139, 144).

12       In this regard, petitioner has failed to state a cognizable ineffective assistance of counsel

13   claim.  Petitioner has not shown that his trial counsel's review and treatment of the discovery

14   materials produced fell "outside the wide range of professionally competent assistance,"

15   *Strickland*, 466 U.S. at 690, or shown anything to suggest a reasonable probability that the

16   outcome of his trial would have been different had his counsel performed otherwise in this regard.

17   **E.    Claim Nine**

18       In his Claim Nine, petitioner asserts that his trial attorney had an "inadequate motion

19   strategy" because he was unable to reach a stipulation with the government to continue

20   petitioner's sentencing and extend the briefing schedule as to his post-trial motions.  (Doc. No.

21   129 at 52–53.)  According to petitioner, he was prejudiced by this failure because as a result, his

22   attorney had inadequate time to present arguments on his behalf.  (*Id.*)  In response, the

23   government contends that petitioner's Claim Nine is based on pure speculation and does not

24   provide grounds to support an ineffective assistance of counsel claim.  (Doc. No. 140 at 20–21.)

25   /////

26

27   [8]  The court notes that petitioner's assertion that the owners of Highlands should have been
     deposed by his trial attorney is frivolous since the Federal Rules of Criminal Procedure do not
28   generally provide for or authorize depositions in federal criminal prosecutions.

The government is of course correct in this regard.  This purported ineffective assistance of counsel claim is frivolous and clearly fails to demonstrate either any ineffective assistance rendered by trial counsel or prejudice stemming therefrom.

**F.     Claim Ten**

In his tenth claim for relief, petitioner contends that his trial attorney denied him his right to testify at trial.  (Doc. No. 129 at 55.)  Petitioner claims that he informed his attorney of his intent to testify, that he appeared on the defense witness list, but that his attorney rested the defense case without allowing petitioner the opportunity to testify.  (*Id.*)

In opposition, the government argues that petitioner's trial attorney informed petitioner of his right to testify at trial, that petitioner chose not to testify, and that petitioner stated no objection at his trial when the court was informed that the defense would not be calling any witnesses even though that decision was announced outside the presence of the jury and there was clearly an opportunity for him to express his desire to testify if he wished to do so.  (Doc. No. 140 at 21) (citing Doc. Nos. 140-2 at ¶ 104; 80–85, Trial Transcript at 616:14–18, 618:22–25).

Petitioner's trial counsel states in his detailed declaration that he specifically discussed with petitioner his right to testify or not testify at his trial and that petitioner elected not to testify because he did not want to be cross-examined.  Certainly, petitioner expressed no disagreement whatsoever when his trial counsel informed the court, outside the presence of the jury, that the defense would not be calling any witnesses and would instead rest.  Thereafter, a recess was taken and still, petitioner in no way indicated a disagreement with that decision or a desire to testify. As noted above, even after the trial and his conviction, petitioner indicated in writing that he "stood behind" all of decisions made during his trial.  Finally, petitioner has clearly not established prejudice in connection with his claim that his counsel was ineffective by failing to call him as a witness at trial.  Indeed, given the overwhelming nature of the evidence presented at is trial in support of his convictions making such a showing would be a daunting task.

**G.     Claim Eleven**

Petitioner argues in his Claim Eleven that his trial counsel failed to advise him of a motion for judgment of acquittal under Federal Rule of Civil Procedure 29 and therefore denied

15

1    petitioner of an opportunity to argue for his acquittal based upon inventory reports and invoices

2    that had not been introduced into evidence.  (Doc. No. 129 at 57.)  In response, the government

3    argues both that petitioner fails to understand the purpose and scope of a Rule 29 motion and that

4    petitioner's attorney did in fact make a Rule 29 motion at the close of the government's case in

5    chief which was denied.  (Doc. No. 140 at 22) (citing Doc. Nos. 82–85, Trial Transcript 612:7–9

6    to 616:9).

7         The government is correct as to both of its arguments. This purported ineffective

8    assistance of counsel claim is also frivolous and clearly fails to demonstrate either any ineffective

9    assistance by trial counsel or prejudice stemming therefrom.

10   **H.     Claim Twelve**

11        In his Claim Twelve, petitioner asserts that he had grounds upon which to base a motion

12   for a new trial under Rule 33 of the Federal Rules of Criminal Procedure but did not learn of the

13   possibility of such a motion from his attorney in a timely manner.  (Doc. No. 129 at 59–60.)

14        In opposition, the government contends that trial counsel discussed with petitioner the

15   absence of valid grounds upon which to base a motion for new trial initially and did in fact

16   subsequently file a timely motion for a new trial after petitioner came forward with additional

17   information and documents.  (Doc. No. 140 at 22–24) (citing Doc. Nos. 140-2, Days Decl.

18   ¶¶ 150, 163–67; 140-3, Exh. O, P).  The government notes that petitioner's proposed grounds for

19   moving for a new trial were included in the motion for a new trail that was filed on his behalf

20   (Doc. No. 90 at 5, 8–10, 12–14), and that petitioner also raised two of those issues in his

21   unsuccessful appeal to the Ninth Circuit.  (Doc. No. 140 at 22–24.)  The government contends

22   that any new trial motion based upon petitioner's failure to testify at trial would have been

23   baseless because such a motion would have had no factual support since petitioner himself chose

24   not to testify at trial.  (*Id.*)  Finally, the government argues that petitioner's claim that his

25   attorney's alleged failure to discuss with him the availability of a motion for a new trial prevented

26   him from researching other potential Rule 33 challenges is purely speculative and does not

27   provide a sufficient basis for relief.

28   /////

Once again, the government's argument is persuasive.  The court finds this ineffective assistance claim to be frivolous.  Petitioner's motion for a new trial was made and denied and his judgment of conviction was affirmed on appeal with his arguments being rejected.  Neither ineffective assistance nor prejudice have been shown as to this claim.

## I.      Claim Thirteen

In his thirteenth claim, petitioner contends that his counsel never discussed the merits of the government's plea offer with him based on the strength of the government's case because of his counsel's assessment that the case against petitioner was weak.  (Doc. No. 129 at 62.)  In response, the government contends that trial counsel discussed the merits of the case with petitioner and did in fact present and explain the government's plea offer to him, but that petitioner rejected that offer in favor of taking the case to trial.  (Doc. No. 140 at 24) (citing Doc. Nos. 37; 140-2 at ¶¶ 54-64, 127.)

As noted above, "[t]here is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689.)   Moreover, to prevail on a claim of ineffective assistance of counsel in connection with plea negotiations, a petitioner must demonstrate "gross error on the part of counsel," *Turner*, 281 F.3d at 880 (quoting *McMann*, 397 U.S. at 772), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." *Id.* (quoting *Day*, 969 F.2d at 43).  Finally, defense counsel is not "required to accurately predict what the jury or court might find." *Turner*, 281 F.3d at 881; *see also McMann*, 397 U.S. at 771.  Nor is counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. *Turner*, 281 F.3d at 881.  As the Ninth Circuit has observed, while counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." *Id.*  The relevant question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771.

17

1      Applying this standard here, the court concludes that petitioner's ineffective assistance of

2   counsel claim in this respect clearly lacks merit and is factually unsupported. Here, petitioner

3   does not actually claim that he was not made aware of the government's plea offer.  Indeed, he

4   could not credibly do so since the fact of the plea offer having been made was placed on the

5   record.  Rather he merely alleges in conclusory fashion that the offer wasn't explained to him

6   taking into account the strength of the government's case against him, thus preventing him from

7   making "an informed decision regarding a plea."[9]  Yet, nowhere does petitioner contend that had

8   he been told by his trial attorney that the government's case against him was strong, that he would

9   have accepted the plea offer rather than proceeding to trial.  See *Lafler v. Cooper*, 566 U.S. at 164

10  ("[A] defendant must show that but for the ineffective advice of counsel there is a reasonable

11  probability that . . . the defendant would have accepted the plea [offer] . . . , and that the

12  conviction or sentence, or both, under the offer's terms would have been less severe than under

13  the judgment and sentence that in fact were imposed [after trial]."); *see also Michaels v. Davis*, 51

14  F.4th 904, 941 (9th Cir. 2022) ("[*Cooper*]  held that to show prejudice from an attorney's

15  deficient advice to reject a plea offer, a defendant must establish more than that he would have

16  accepted the plea deal.  He also must show that 'there is a reasonable probability that the plea

17  offer would have been presented to the court ..., that the court would have accepted its terms, and

18  that the conviction or sentence, or both, under the offer's terms would have been less severe than

19  under the judgment and sentence that in fact were imposed.'")  Because defendant-petitioner

20  Lester has not even attempted to make such a showing here, the court also finds this claim to be

21  frivolous.

22  **J.      Claim Fourteen**

23      In his Claim Fourteen, petitioner contends that his trial counsel failed to adequately

24  address the upward adjustment in the guideline calculation for use of sophisticated means at the

25  time of his sentencing by:  (1) failing to investigate the use of Highland's Paypal account prior to

26

---

27  [9]  This contention by petitioner is curious given his adamant denial of his guilt and his detailed,
    but wholly unsupported, version of how he was actually innocent of the offenses for which he
28  was convicted.

1    petitioner's employment there; and (2) failing to argue at sentencing that 69.4% of convicted

2    defendants who receive upward adjustments in their sentencing guideline calculation based upon

3    use of sophisticated means are ultimately sentenced to terms below their advisory sentencing

4    guideline range.  (Doc. No. 129 at 64–67.)

5         The government argues that petitioner's fourteenth claim is unfounded because petitioner

6    has ignored and failed to address the facts and findings supporting the sophisticated means

7    upward adjustment to his offense level found by the court in this case.  (Doc. No. 140 at 25–26)

8    (citing Doc. Nos. 92 at 6–7; 92-5 at 3; 114, at 47:1-7; 82–85, Trial Transcript at 341:13-342:25,

9    276:25–278:9.)  The government also points out that petitioner's trial attorney in fact objected to

10   the sophisticated means upward adjustment at the time of petitioner's sentencing.  (*Id.*) (citing.

11   140-2 at ¶ 167).

12        The government's arguments as to this claim are persuasive as well.  Petitioner's trial

13   counsel raised these issues prior to sentencing.  Counsel specifically objection to the application

14   of an upward adjustment in the advisory guideline calculation for use of sophisticated means.

15   (Doc. No. 90 at 9–10.)   The court overruled that objection based upon the evidence presented at

16   trial and adopted the presentence report's offense level calculation which included that two-point

17   upward adjustment.  (Doc. No. 114 at 46–47.)  While petitioner continues to disagree with the

18   court's conclusion as to that issue, he has failed to in any way allege a cognizable ineffective

19   assistance of counsel claim in light of his counsel's objection to the upward adjustment.

20   **K.      Claim Fifteen**

21        Petitioner next argues that he received ineffective assistance from his trial counsel at

22   sentencing because his counsel did not offer inventory invoices and receipts in an attempt to

23   mitigate the loss amount calculation for sentencing guideline calculation purposes.  (Doc. No. 129

24   at 69.)  Petitioner again claims in conclusory fashion that invoices and receipts could have shown

25   that Highlands received the materials it claimed it did not receive, thereby reducing the loss

26   amount.  (*Id.*)  According to petitioner, by failing to offer this evidence his trial counsel "exposed

27   [petitioner] to a more severe sentence and forfeiture."  (*Id.*)

28   /////

In response, the government notes that petitioner's attorney zealously argued for a lower loss amount determination at sentencing (Doc. No. 114 at 43:16–44:11, 15:15–46:2) but that the court found the evidence in support of its finding of $306,319.88 (between $250,000 and $550,000 under the guidelines) in loss suffered by the victim as a result of petitioner's criminal conduct to be overwhelming (*id.* at 39:11–13, 40:4–14).  (Doc. No. 140 at 26–27.)  As discussed above, the government also reiterates that trial counsel's decision not to present the invoices and receipts to which petitioner refers was clearly reasonable based upon counsel's concern that the documents appeared to have been fabricated by petitioner and, if presented, would have risked a further upward adjustment in petitioner's offense level based upon an obstruction finding.  (*Id.*) (citing Doc. Nos. 140-2 at ¶¶ 20, 40, 68-69, 88-90, 171; 140-3, Exh. C-2, D.)

Once again, the government's arguments are persuasive and clearly carry the day.  His trial counsel specifically objected to the $306,319.88 loss amount calculation set forth in the presentence report on the very grounds that petitioner continues to assert here—that Highland's received inventory that petitioner acquired in "off record" purchases and despite the tracing of Highland's money into his own bank account.  That defense was rejected by the jury at trial. Counsel's decision not to offer documents of a questionable origin into evidence to support that rejected defense was a reasonable strategic choice made by counsel which is "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

**L.    Claim Sixteen**

In his final claim, petitioner argues that the objection made to forfeiture in the loss amount of $306,319.88 on his behalf by his trial attorney was "perfunctory" and denied petitioner the effective assistance of counsel in that regard.  (Doc. No. 129 at 16.)

The government counters that the court's forfeiture order may not be challenged in a § 2255 motion because § 2255's "language clearly and unambiguously limits its applicability to defendants seeking release from custody.  It is not available to those . . . who challenge only fines or restitution orders."  (Doc. No. 140 at 27) (quoting *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1996)).

/////

20

1     The government is correct in this regard.  *See United States v. Thiele*, 314 F.3d 399, 400

2   (9th Cir. 2002) ("28 U.S.C. § 2255 is available to prisoners claiming the right to be released from

3   custody.  Claims for others types of relief, such as relief from a restitution order, cannot be

4   brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release

5   from custody."); *see also United States v. Gilbert*, 807 F.3d 1197, 1201 (9th Cir. 2015).

6   Couching one's restitution challenge in terms of an ineffective assistance of counsel claim does

7   not change this result.  *Thiele*, 314 F.3d at 402.  Moreover, even if such a claim was cognizable

8   under § 2255, petitioner's trial counsel filed objections to the forfeiture order and the undersigned

9   overruled those objections.  (See Doc. No. 99.)  Petitioner has alleged no facts nor made any

10   showing that would support an ineffective assistance of counsel claim in this regard.

11   Accordingly, relief will be denied as to this claim as well.

12                                              **CONCLUSION**

13     For all of the reasons explained above, defendant-petitioner Lester's motion to vacate, set

14   aside or correct sentence under 28 U.S.C. § 2255 (Doc. No. 129) is denied in its entirety.

15   IT IS SO ORDERED.

16     Dated:   __**January 4, 2023**__                    _____

17                                                          UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28